GARY M. RESTAINO
United States Attorney
District of Arizona
Assistant United States Attorney
Jane L. Westby
Assistant U.S. Attorney
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: jane.westby@usdoj.gov

COREY R. AMUNDSON
Chief, Public Integrity
U.S. Department of Justice
Trial Attorney
Nicholas W. Cannon
1301 New York Ave., NW
Washington, D.C. 20530
Telephone: 202-514-8187
Email: nicholas.cannon2@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-24-08132-TUC-RM(EJM) |
| Plaintiff, | |
| vs. | PLEA AGREEMENT |
| Elizabeth Gutfahr, | |
| Defendant. | |

The United States of America and the defendant agree to the following disposition of this matter:

## PLEA

1.  The defendant agrees to plead guilty to Counts One, Two, and Three of an Information, which charges the defendant with a Class C felony violation of 18 U.S.C. § 666(a)(1)(A), Embezzlement by a Public Official, a Class C felony violation of 18 U.S.C. § 1956(a)(1)(B)(i), Money Laundering, and a Class D felony violation of 26 U.S.C. § 7201, Individual Tax Evasion (Assessment). The parties agree that no further charges related to

the defendant's conduct – further described in the Statement of Facts – will be pursued by the United States as a condition of this Plea Agreement.

<u>Elements of the Offense</u>

2. The elements of the offenses to which the defendant is pleading guilty are:

   a. Embezzlement – 18 U.S.C. § 666(a)(1)(A)
      i. From 2019 through 2024, the defendant was an agent of Santa Cruz County;
      ii. During each of the years, 2019, 2020, 2021, 2022, 2023, and 2024, Santa Cruz County received federal benefits in excess of $10,000;
      iii. Defendant stole, embezzled, and obtained by fraud property, that is, Santa Cruz County funds;
      iv. The property, that is Santa Cruz County funds, were in the care, custody, and control of Santa Cruz County, and specifically, the Santa Cruz County Treasurer; and
      v. The value of the stolen, embezzled, and fraudulently obtained funds were at least $5,000.

   b. Money Laundering – 18 U.S.C. § 1956(a)(1)(B)
      i. The defendant conducted a financial transaction involving property that represented the proceeds of a specified unlawful activity (to wit: wire fraud in violation of 18 U.S.C. § 1343);
      ii. The defendant knew that the property represented proceeds of some form of unlawful activity; and
      iii. Third, the defendant knew the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds.

   c. Tax Evasion – 26 U.S.C. § 7201
      i. The defendant owed more federal income tax for the calendar year 2023 than was declared due on the defendant's income tax return for that calendar year;

ii. The defendant knew that more federal income tax was owed than was declared due on the defendant's income tax return;

iii. The defendant made an affirmative attempt to evade or defeat such additional tax; and

iv. In attempting to evade or defeat such additional tax, the defendant acted willfully.

### Maximum Penalties

3. The defendant understands the following regarding maximum penalties for each offense. The maximum penalty for Count One of the Information is a fine of up to $250,000, a term of up to 10 years imprisonment, or both, and a term of up to 3 years supervised release. Count One is a Class C felony offense. The maximum penalty for Count Two of the Information is a fine up to $500,000, or twice the value of the funds involved, whichever is greater, a term of up to 20 years imprisonment, or both, and a term of up to 3 years of supervised release. Count Two is a Class C felony offense. The maximum penalty for Count Three is a fine up to $100,000, a term of up to 5 years imprisonment, or both, and a term of up to 3 years supervised release. Count Three is a Class D felony offense.

4. Pursuant to 18 U.S.C. § 3663A, the defendant agrees restitution in this case is mandatory and further agrees to make restitution to Santa Cruz County or other identified victim in the disclosure for all losses to include losses arising from counts dismissed and charges not prosecuted as well as all relevant conduct in connection with those counts and charges.

5. The defendant agrees to pay a fine unless the defendant establishes the applicability of the exceptions contained in § 5E1.2(e) of the Sentencing Guidelines.

6. Pursuant to 18 U.S.C. § 3013, the defendant must pay a special assessment of $100.00 per felony count. The special assessment is due and payable at the time the defendant enters the plea of guilty, but in no event shall be paid later than the time of sentencing unless the defendant is indigent. If the defendant is indigent, the special

assessment will be collected according to the provisions of Chapters 227 and 229 of Title 18, United States Code.

7. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

<u>Immigration Consequences</u>

8. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is a recently naturalized United States citizen or is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. Although there may be exceptions, the defendant understands that the defendant's guilty plea and conviction for this offense make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States. The defendant agrees that the defendant has discussed this eventuality with their attorney. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that this plea entails, even if the consequence is the defendant's automatic removal from the United States.

<u>STIPULATIONS, TERMS AND AGREEMENTS</u>

<u>Agreements Regarding Sentencing</u>

9. The defendant understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C. § 3553(a), including a consideration of the Sentencing Guidelines. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and to assist the Court in determining the appropriate sentence, the parties stipulate to the following:

10. <u>Stipulation</u>: Pursuant to Fed. R. Crim. P. 11(c)(1)(A) & (B), the parties agree that:

      a. The United States will recommend a sentence within the applicable sentencing guideline range determined by the Court at sentencing.

      b. The parties agree the loss amount for purposes of the Sentencing Guidelines is $38,712,100.00. *See* U.S.S.G. § 2B1.1(b)(1)(L).

      c. The parties agree that the Court will determine whether the offense resulted in substantial financial hardship to one or more victims. *See* U.S.S.G. § 2B1.1(b)(2)(A)(iii). The parties further agree that the Court's determination is final and waive the right to appeal the Court's determination of this issue.

      d. The parties agree that the offense involved sophisticated means and that the defendant intentionally engaged in and caused the conduct constituting sophisticated means. *See* U.S.S.G. § 2B1.1(b)(10)(C).

      e. The parties agree that the defendant abused her position of trust as the Santa Cruz County Treasurer when committing the offense. *See* U.S.S.G. § 3B1.3.

      f. The parties agree that the defendant's relevant conduct includes wire fraud with a scheme to defraud resulting in a loss of $38,712,100.00, and that wire fraud, in violation of Title 18, United States Code, § 1343, is the underlying offense to Count 2 of the Information, money laundering, in violation of Title 18 U.S.C. § 1956(a)(1)(A), to which defendant is pleading guilty. *See* U.S.S.G. § 1B1.3(a)(1)(A) and § 2S1.1(a)(1).

11. The parties agree that the Court will determine whether the defendant meets all the criteria for Certain Zero-Point Offenders pursuant to U.S.S.G. § 4C1.1, including whether the defendant caused substantial financial hardship (§ 4 C1.1(a)(6)). The parties further agree that the Court's determination is final and waive the right to appeal the Court's determination of this issue.

12. The defendant agrees not to seek any additional adjustments in Chapters Two, Three or Four of the Sentencing Guidelines beyond those stated in this section, or any "departures" from the Sentencing Guidelines. The defendant acknowledges that if the defendant seeks any further such adjustment or departure, the government may withdraw from the plea.

13. Nothing in this agreement precludes the defendant from asking for a variance from the final advisory Sentencing Guidelines Range.

14. <u>Recommendation: Acceptance of Responsibility</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), if the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Guidelines sentencing offense level pursuant to U.S.S.G.§ 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

15. <u>Non-Binding Recommendations</u>. The defendant understands that recommendations under Fed. R. Crim. P. 11(c)(1)(B) are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

16. The defendant understands that if the defendant violates any of the conditions of the defendant's supervised release, the supervised release may be revoked. Upon such revocation, notwithstanding any other provision of this agreement, the defendant may be required to serve a term of imprisonment or the defendant's sentence may otherwise be altered.

17. The defendant and the government agree that this agreement does not in any manner restrict the actions of the government in any other district or bind any other United States Attorney's Office.

18. The defendant understands and agrees to cooperate fully with the United States Probation Office in providing (a) all criminal history information, i.e., all criminal convictions as defined under the Sentencing Guidelines; (b) all financial information, i.e., present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution; (c) all history of drug abuse which would warrant a treatment condition as

part of sentencing; and (d) all history of mental illness or conditions which would warrant a treatment condition as part of sentencing.

19. If the Court, after reviewing this plea agreement, concludes any provision is inappropriate, it may reject the plea agreement pursuant to Rule 11(c)(5), Fed. R. Crim. P., giving the defendant, in accordance with Rule 11(d)(2)(A), Fed. R. Crim. P., an opportunity to withdraw the defendant's guilty plea.

## Restitution

20. Pursuant to 18 U.S.C. § 3663A, the defendant specifically agrees to make restitution to Santa Cruz County, estimated by the government to be in the amount of amount of $38,712,100.00. The defendant agrees that all funds collected under any receivership in Pima County Superior Court Cause No. C20244535 shall be credited toward the restitution owed in the amount of $38,712,100.00. Nothing in this agreement prevents the United States from obtaining a restitution order or judgement in the amount of any unpaid balance of the $38,712,100.00 in restitution owed. The defendant agrees not to contest the sale of the assets subject to the Receivership in Pima County Superior Court case number C20244535. If the defendant contests the sale of any assets subject to the Receivership in case number C20244535, the government reserves the right to withdraw from this agreement.

21. The defendant further agrees that pursuant to 18 U.S.C. § 3663(a)(3), the defendant shall pay the United States Treasury tax due and owing in the amount of $13,143,526.00 for the tax years 2014 through 2023. All payments to the United States Treasury will follow the payment of the restitution to Santa Cruz County in the amount of $38,712,100.00 and the satisfaction of any judgment under C20244535.

22. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement.

23. The defendant agrees that the defendant will waive their right to appeal any order of the district court relating to restitution.

24. The defendant understands that the willful failure to pay the restitution and/or fine will be a violation of their supervised release and/or probation, which could subject the defendant to a term of prison.

### Assets and Financial Responsibility

25. The defendant agrees that the defendant will truthfully complete and return a financial affidavit that will be provided to him by the Financial Litigation Program of the United States Attorney's office within 45 days after the completed change of plea hearing. The defendant further agrees the defendant shall (i) make a full accounting of all assets, including real and personal property in which the defendant has any legal or equitable interest; (ii) permit the U.S. Attorney's Office to immediately obtain the defendant's credit reports in order to evaluate the defendant's ability to satisfy any financial obligation that is or might be imposed by the court; (iii) make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Program, for any purpose [as well as the financial condition of all household members (including but not limited to that of a spouse or child)]; (iv) cooperate fully with the government and the probation officer to execute such documentation as may be necessary to secure assets to be applied to restitution owed by the defendant. The defendant agrees to permit the probation officer to provide to the U.S. Attorney's Office copies of any and all financial information provided by the defendant to the U.S. Probation Office; (v) not (and shall not aid and abet any other party to) sell, hide, waste, spend, destroy, transfer or otherwise devalue any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures); and (vi) submit to an interview in which the defendant will fully and truthfully answer all questions regarding the defendant's past and present financial condition. The defendant agrees that any failure to comply with the provisions in this paragraph that occurs prior to sentencing will constitute a violation of this plea agreement.

25. Pursuant to 18 U.S.C. § 3613, the defendant agrees that all financial obligations imposed by the court, including restitution, shall be due immediately upon judgment, shall be subject to immediate enforcement by the government, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect any periodic payment schedule). If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program pursuant to a payment schedule to be determined by the court. The defendant understands that any schedules of payments imposed by the court, including schedules imposed while the defendant is incarcerated or on supervised release, are merely minimum schedules of payments and not the only method, nor a limitation on the methods, available to the government to enforce the judgment.

### Forfeiture, Civil, and Administrative Proceedings

26. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Further, this agreement does not preclude the United States from instituting any civil proceedings as may be appropriate now or in the future.

### Waiver of Defenses and Appeal Rights

27. Provided the defendant receives a sentence consistent with this agreement that does not exceed the statutory maximum or any stipulated sentence, the defendant waives (l) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentencing-including the manner in which the sentence is determined, the determination whether defendant qualifies for "safety valve" (U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f)), and any sentencing guideline determinations. The

defendant further waives: (1) any right to appeal the Court's entry of judgment against defendant; (2) any right to appeal the imposition of sentence upon defendant under Title 18, United States Code, Section 3742 (sentence appeals); (3) any right to appeal the district court's refusal to grant a requested variance; (4) any right to collaterally attack defendant's conviction and sentence under Title 28, United States Code, Section 2255, or any other collateral attack; and (5) any right to file a motion for modification of sentence, including under Title 18, United States Code, Section 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion). The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging the defendant's conviction or sentence in this case. If the defendant files a notice of appeal or a habeas petition, notwithstanding this agreement, the defendant agrees that this case shall, upon motion of the government, be remanded to the district court to determine whether the defendant is in breach of this agreement and, if so, to permit the government to withdraw from the plea agreement. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

## Reinstitution of Prosecution

28. Nothing in this agreement shall be construed to protect the defendant in any way from prosecution for perjury, false declaration or false statement, or any other offense committed by the defendant after the date of this agreement. In addition, if the defendant commits any criminal offense between the date of this agreement and the date of sentencing, the government will have the right to withdraw from this agreement. Any information, statements, documents and evidence which the defendant provides to the United States pursuant to this agreement may be used against the defendant in all such proceedings.

29. If the defendant's guilty plea is rejected, withdrawn, vacated, or reversed by any court in a later proceeding, the government will be free to prosecute the defendant for

all charges as to which it has knowledge, and any charges that were dismissed because of this plea agreement will be automatically reinstated. In such event, the defendant waives any objections, motions, or defenses based upon the Speedy Trial Act or the Sixth Amendment to the Constitution as to the delay occasioned by the later proceedings. The defendant agrees that any stipulations set forth under "Agreements Regarding Sentence" will not be offered if prosecution is re-instituted.

### Plea Addendum

30.     This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal. Accordingly, additional agreements, if any, may not be in the public record.

### WAIVER OF DEFENDANT'S RIGHTS AND FACTUAL BASIS

### Waiver of Rights

31.     I have read each of the provisions of the entire plea agreement with the assistance of counsel and understand its provisions. I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I will be giving up my right to plead not guilty; to trial by jury; to confront, cross-examine, and compel the attendance of witnesses; to present evidence in my defense; to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination; all with the assistance of counsel; to be presumed innocent until proven guilty beyond a reasonable doubt; and to appeal.

32.     I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

33.     I have been advised by my attorney of the nature of the charge to which I am entering my guilty plea. I have been advised by my attorney of the nature and range of the possible sentence, and that I will not be able to withdraw my guilty plea if I am dissatisfied with the sentence the court imposes.

34. My guilty plea is not the result of force, threats, assurances or promises other than the promises contained in this agreement. I agree to the provisions of this agreement as a voluntary act on my part, rather than at the direction of or because of the recommendation of any other person, and I agree to be bound according to its provisions. I agree that any potential sentence referred to herein or discussed with my attorney is not binding on the Court and is merely an estimate.

35. I agree that this written plea agreement contains all the terms and conditions of my plea and that promises made by anyone (including my attorney) that are not contained within this written plea agreement are without force and effect and are null and void.

36. I am satisfied that my defense attorney has represented me in a competent manner.

37. I am not now on or under the influence of any drug, medication, liquor, or other intoxicant or depressant, which would impair my ability to fully understand the terms and conditions of this plea agreement.

### Factual Basis and Relevant Conduct

I further agree that the following facts accurately describe my conduct in connection with the offenses to which I am pleading guilty and that if this matter were to proceed to trial the government could prove the elements of the offenses beyond a reasonable doubt:

### The Scheme to Defraud by Wire Transfer of Funds

Beginning in 2012 and continuing through April 12, 2024, I served as the elected Treasurer of Santa Cruz County, in the District of Arizona. During this time, as Treasurer, I was an agent of Santa Cruz County and was entrusted with the care, custody, and safeguarding of the funds of Santa Cruz County.

Beginning on or before March 13, 2014, I knowingly and willfully devised and intended to devise a scheme to defraud the taxpayers and the entities of Santa Cruz County to steal and embezzle the funds in the care, custody, and

control of Santa Cruz County. I intended to defraud the taxpayers and the entities of Santa Cruz County.

Between March 13, 2014, and March 28, 2024, I executed my scheme to defraud Santa Cruz County by means of the wire transfer of funds from Santa Cruz County JP Morgan Chase Bank accounts, a savings account ending in 6320 ("Savings Account") and a checking account ending in 2669 ("Checking Account"), to my Wells Fargo Bank account ending in 8516 (the "Wells Fargo Account") and my BMO account ending 6896 (the "BMO Account"). I was never authorized to transfer Santa Cruz County funds to either my Wells Fargo Account or my BMO Account.

In furtherance of the scheme to defraud, I used the business name Rio Rico Real Estate and Consulting on my Wells Fargo Account and the business name Rio Rico Consulting, LLC, on my BMO account. These account names were materially false and fraudulent representations to intentionally conceal the fact that I was wire transferring Santa Cruz County funds to my Wells Fargo and BMO Accounts to embezzle the County's funds.

I opened the Wells Fargo Account under the name Rio Rico Real Estate and Consulting as the sole proprietor and only signer on the account. Rio Rico Real Estate and Consulting was not an operating business and performed no services for Santa Cruz County. I used this business name to move the stolen Santa Cruz County funds to my Wells Fargo Account for my personal use without detection by the County. I used the Wells Fargo Account to make it appear as if the funds were being transferred for an investment on behalf of Santa Cruz County. This was false as the Wells Fargo Account was my account that was used for my personal benefit.

I opened the BMO Account under the name Rio Rico Consulting, LLC. Rio Rico Consulting, LLC was created by me to wire the funds I was stealing from Santa Cruz County's Savings Account for my personal use without detection. At no point did Rio Rico Consulting, LLC perform any services of any kind for Santa Cruz County.

I wire transferred the Santa Cruz County funds from the County's Savings Account and Checking Account for the purpose and as an essential part of carrying out the scheme to defraud to fraudulently obtain the funds for my personal use, all without authorization.

Specifically, between March 13, 2014, and March 28, 2024, I knowingly stole or otherwise embezzled approximately $38,712,100.00 of Santa Cruz County funds by means of 187 wire transfers from Santa Cruz County's

Savings Account and Checking Account to my Wells Fargo Account and my BMO Account. I wire transferred all of the public funds that I embezzled to my Wells Fargo Account until on or about January 30, 2024, when I began to wire transfer the stolen public funds to my BMO Account, which I opened on January 29, 2024. The amount that I stole from Santa Cruz County each year is as follows:

| Year | Number of Wire Transfers | Amount Embezzled |
| --- | --- | --- |
| 2014 | 6 | $386,100.00 |
| 2015 | 12 | $948,000.00 |
| 2016 | 13 | $920,000.00 |
| 2017 | 18 | $1,970,000.00 |
| 2018 | 23 | $2,160,000.00 |
| 2019 | 24 | $3,560,000.00 |
| 2020 | 26 | $4,525,000.00 |
| 2021 | 18 | $4,913,000.00 |
| 2022 | 18 | $5,165,000.00 |
| 2023 | 21 | $11,350,000.00 |
| 2024 | 8 | $2,815,000.00 |
| **Total** | **187** | **$38,712,100.00** |

In furtherance of my scheme to defraud, I subverted the two-step approval process for the 187 wire transfers I completed by utilizing the token of another Santa Cruz County employee who was my subordinate so that I could both initiate and the approve the wire transfers. The purpose of the two-step approval process was to prevent any one person from both initiating and authorizing a wire transfer for the safeguarding of the funds.

In furtherance of my scheme to defraud, I also lied to my subordinate. I told my subordinate that the Wells Fargo Account was a Santa Cruz County savings account that was used to earn interest for the County. This was false.

In furtherance of my scheme to defraud, I falsified Santa Cruz County accounting records to conceal the fact that I had stolen the public funds that were in my care. From about 2018 through 2020, I repeatedly falsified the cash reconciliation records by falsely reporting that some payments for County expenses, although posted to the bank accounts, had not been recorded on the County general ledger, all while I knew that the payments had been posted to the County's general ledger. From about 2021 to 2023, I falsified the cash reconciliation reports by reporting that the County had an

investment account at UBS Financial Services with a balance of $14,000,000.00, $17,200,000.00, and $26,531,512.60 as of June 30 for each of the years 2021 through 2023. In support of these false investment balances, I created false UBS statements reflecting these false investment amounts to conceal the millions of dollars that I had stolen from the people of Santa Cruz County.

Wire transfers that I used to steal the funds of Santa Cruz County were transmitted from a location within Arizona to a location outside of Arizona.

After I wire transferred the funds that I stole from Santa Cruz County into my Wells Fargo Account and my BMO Account, those funds were the proceeds of a specified unlawful activity of wire fraud in violation of Title 18 U.S.C. § 1343.

I used the public money that I stole from Santa Cruz County for my personal enrichment, including for the purchase of real estate, the payment of operating expenses for my ranch at Rancho San Cayetano and my cattle business, Double D Cattle Company of Santa Cruz County, LLC (later Gutfahr Land and Cattle Company, LLC), the payment of approximately $6,000,000.00 in renovations for my ranches, the purchase at least twenty vehicles, and to pay for other personal expenses for me and my family.

I knew when I was stealing the funds from Santa Cruz County's Savings Account that the funds in this account were used to pay expenses for schools and fire districts in Santa Cruz County. I agree I owe restitution in the amount of $38,712,100.00

### Count 1
18 U.S.C. § 666(a)(1)(A)
(Federal Program Theft – Embezzlement by a Public Official)

Between November 21, 2019, and March 28, 2024, I was an agent of Santa Cruz County and I knowingly and intentionally embezzled $29,093,000.000 in Santa Cruz County Funds, stealing at least $5,000 in each of the following years, as described in the table below:

| Date | Amount |
|---|---|
| November 21, 2019, to December 31, 2019 | $325,000.00 |
| 2020 | $4,525,000.00 |
| 2021 | $4,913,000.00 |

- 15 -

| | |
|---|---|
| 2022 | $5,165,000.00 |
| 2023 | $11,350,000.00 |
| January 1, 2024, to March 28, 2024 | $2,815,000.00 |
| **TOTAL** | $29,093,000.00 |

During each of the years 2019 through 2024, Santa Cruz County received federal benefits in excess of $10,000.00.

## Count 2
### Title 18 U.S.C. § 1956(a)(1)(B)
### (Money Laundering)

On March 2, 2021, I completed an online transfer in the amount of $91,242.85, from my Wells Fargo Account ending in 8516 to my Double D Cattle Company of Santa Cruz County, LLC Wells Fargo account ending in 0207. I knew that the $91,242.85 in funds that I transferred from my Wells Fargo Account ending in 8516 were funds that I had stolen by means of wire transfer from Santa Cruz County's Chase savings account ending in 6320 to my Wells Fargo Account ending in 8516, in furtherance of the scheme to defraud described above. I admit that the wire transfer of the $91,242.85 was part of a larger sum of money wire transferred that caused an electronic transmission between Arizona and a location outside of Arizona. Therefore, I admit that $91,242.85 were proceeds from wire fraud, a specified unlawful activity.

On the same day that I transferred the $91,242.85 in stolen funds to my Wells Fargo Account ending in 0207, I purchased a 2021 Ford F350, VIN number ending 0993, by writing Check No. 1085, dated March 2, 2021, and drawn on Wells Fargo Account ending in 0207. I transferred the funds from my Wells Fargo account ending in 8516 to my Wells Fargo account ending in 0207 to conceal and disguise that the source of the funds that was used to pay for the vehicle was the Santa Cruz County Savings Account and my Wells Fargo account ending in 8516 where I had deposited the funds that I stole from the Santa Cruz County.

The payment of the 2021 Ford F350 with check No. 1085, drawn on my Wells Fargo account ending in 0207 is a financial transaction. I knew at the time that the $91,242.85 that I used to pay for the vehicle were the proceeds of an unlawful activity; and, I knowingly designed the transaction to conceal and disguise that the source of the funds was the Sant Cruz County savings account ending in 6320.

**Count 3**
Title 26 U.S.C. § 7201
(Tax Evasion)

From on or about March 13, 2014, through on or March 28, 2024, I was a United States Citizen and a resident of Arizona. During this time, I willfully attempted to evade and defeat the payment of income tax due and owing for the tax year 2023 by committing the following affirmative act. I willfully concealed $11,350,000.00 in income that I embezzled from Santa Cruz County by transferring the funds by wire transfers from the Santa Cruz County JP Morgan Chase savings account ending in 6320 to my Wells Fargo Bank Rio Rico Real Estate and Consulting account ending in 8516. I used the account name Rio Rico Real Estate and Consulting to make it appear that the income was not mine and evade the assessment and payment of tax.

I knew that I was required to file a Form 1040 with the IRS and I admit that I have a tax due and owing for tax year 2023 in the amount of $4,251,842.00 based on my failure to report my W-2 wages and the $11,350,000.00 that I stole in calendar year 2023 from Santa Cruz County.

10/25/24
Date

Elizabeth Gutjahr
Defendant

### DEFENSE ATTORNEY'S APPROVAL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Rule 11, Fed. R. Crim. P., the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea, including the defendant's waiver of the right to appeal. No assurances, promises, or representations have been given to me or to the defendant by the government or by any of its representatives which are not contained in this written agreement. I concur in the entry of the plea as indicated above and on the terms and conditions set forth in this agreement as in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Rule 11, Fed. R. Crim. P.

10/25/24
Date

Joshua Hamilton
Attorney for Defendant

- 17 -

## GOVERNMENT'S APPROVAL

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth are appropriate and are in the best interests of justice.

COREY R. AMUNDSON
Chief, Public Integrity Section
U.S Department of Justice

/s/ Nicholas W. Cannon
Nicholas W. Cannon
Trial Attorney

GARY M. RESTAINO
United States Attorney
District of Arizona

/s/ Jane L. Westby
Jane L. Westby
Assistant U.S. Attorney